# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

Wayne E. Grubb,

    Plaintiff,

-v-                                       Case No. 2:08-cv-11

YSK Corporation,                    Judge Michael H. Watson

    Defendant.

## OPINION AND ORDER

Plaintiff asserts that Defendant unlawfully discriminated against Plaintiff in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et. seq.* ("ADEA") by terminating his employment. Plaintiff also alleges Defendant unlawfully retaliated against Plaintiff for exercising his rights under the Family Medical Leave Act, 29 U.S.C. § 2601, *et. seq.* ("FMLA") by terminating his employment. Plaintiff also brings state law claims for breach of contract and promissory estoppel claims.[1] This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

This matter is before the Court for consideration of the motion for summary judgment (Doc. 19) filed by Defendant, a memorandum in opposition (Doc. 26) filed by

---

[1] Plaintiff's complaint also alleged claims for unlawful discrimination based on disability (Second Claim, Compl. ¶ 16-18) and termination of employment in violation of public policy (Sixth Claim, Compl. ¶ 32–35). In his memorandum in opposition, Plaintiff stated "1) he can not (sic) present sufficient evidence to establish that he was 'disabled' . . . and 2) that his claim for wrongful termination in violation of public policy bases (sic) solely on claims already protected by his statutory claims for discrimination . . . and the availability of remedies for Plaintiff's allegations renders his public policy claim without merit," which disposes of these two claims. Pl's Memo. in Opp. 5–6 (Doc. 26). Accordingly, the Court finds Defendant's motion for summary judgment well taken in this regard.

Plaintiff, and a reply memorandum (Doc. 32) filed by Defendant. For the reasons that follow, the Court **GRANTS** summary judgment as to Plaintiff's ADEA and FMLA claims, and **REMANDS** to Ross County Common Pleas Court Plaintiff's breach of contract and promissory estoppel claims.

## I. Background

Plaintiff Wayne Grubb ("Plaintiff" or "Grubb") is a former employee of Defendant YSK Corporation ("Defendant" or "YSK" or "the plant"). Plaintiff was born on May 3, 1948, and was 58 years of age when terminated by YSK.

YSK is located in Chillicothe, Ohio, and specializes in the manufacturing of automobile parts and operated a parts plant.

Plaintiff began working at YSK in 1989 and worked most recently as a Shift Supervisor on either the second or third shift. Plaintiff believed he had employment for life barring any egregious wrongdoing. Allegedly, in 1989, YSK President Oshinomi told Plaintiff he had a job for life and Human Resources Director, Bart Rovins, also told Plaintiff he had life employment. During Plaintiff's employment with YSK, Plaintiff received various versions of YSK's Associate Handbook. The Handbook establishes that:

> no Associate or representative of YSK Corporation has the authority at present, or in the future, to . . . offer you an employment contract or alter your at-will status unless that authorization or employment contract is set forth in writing specific to you and signed by the President, the Corporate Secretary, or the Manager of Human Resources and you.

Pl. Grubb Depo. 37–39, 48–49, Exhs. 1–3 (Sept. 23, 2008). Plaintiff does not allege he executed a written employment agreement.

During Plaintiff's employment at YSK, Plaintiff was diagnosed with arthritis and,

in 2005, he slipped two vertebrae. Because of his back pain, Plaintiff had trouble walking on the plant floor as required by his Shift Supervisor duties. In October 2005, he requested a leave of absence pursuant to the FMLA to seek treatment for his back problems. YSK granted Plaintiff the entire amount of FMLA leave sought by Plaintiff. Plaintiff returned to work on January 15, 2006, with no restrictions per his physician's permission.

On June 22, 2006, Plaintiff was questioned via email by First Shift Supervisor Rob Detillion ("Detillion") as to why Plaintiff allowed some third shift employees to go home early the previous evening. Detillion's supervisor, Mike Snyder, and Plaintiff's supervisor, Kent Zeigler ("Zeigler"), were carbon copied on the email. Plaintiff was unhappy about the supervisors being carbon copied on the email and chose to confront Detillion. Plaintiff asked a subordinate hourly associate, Robert Manbevers, to be present during the phone call Plaintiff placed to Detillion. Following the conclusion of the phone call, Plaintiff admittedly called Detillion "a little dickhead and would think twice before doing that again" to Manbevers. Pl.'s Dep. 71–75; Pl.'s Aff. ¶ 8. Plaintiff allegedly also told at least one other subordinate, Rex Newlan, about the incident saying, "Rob is being a dickhead, and I had to teach him a lesson to quit doing that. I called him on it. I called him up and said don't act like a dickhead." Pl.'s Dep. 77; Pl.'s Aff. ¶ 8.

Plaintiff's supervisor, Zeigler, investigated the alleged misconduct and on or about June 28, 2006, Zeigler requested a written memorandum from Detillion regarding the incident. Zeigler also interviewed Manbevers and Newlan about the incident. Zeigler subsequently prepared a memorandum to Linda Shrimp, Human Resources

Manager ("Shrimp"), that compiled his interviews and investigation of the incident. Ziegler, Shrimp, and the General Manager of YSK, Earl Fletcher, discussed and examined the compiled documentation and concluded Grubb's behavior coupled with his supervisory position made his conduct and statements particularly flagrant. In July 2006, Ziegler, Shrimp, and Fletcher recommended to YSK's Board of Directors to terminate Plaintiff's employment on Monday, July 31, 2006, unless, after a meeting with Plaintiff, he was able to rebut the evidence.

On approximately July 29, 2006, however, Plaintiff suffered a heart attack. Shrimp approved immediately leave for Plaintiff and the investigation and termination process was suspended pending his recovery and return to work.

In mid-August 2006, Plaintiff exhausted his FMLA leave and YSK notified Plaintiff of the leave exhaustion. YSK, however, permitted Plaintiff to remain on medical leave and continued to pay Plaintiff his full salary.

Plaintiff returned to work in early October 2006. Upon his return, Plaintiff immediately met with Zeigler, Shrimp and Fletcher regarding the misconduct. Plaintiff did not deny that the abrasive names and conduct occurred, instead he characterized it as "shop talk" and said his intentions were not harmful. YSK terminated Plaintiff's employment on October 13, 2006.

Plaintiff filed the instant suit on January 4, 2008 (Doc. 3).

## II. Discussion

### A. *Standard Involved*

The standard governing summary judgment is set forth in Federal Rule of Civil Procedure 56(c), which provides:

The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

The Court may grant summary judgment if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986); *Petty v. Metropolitan Government of Nashville-Davidson County*, 538 F.3d 431, 438-39 (6th Cir. 2008).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial, and the Court must refrain from making credibility determinations or weighing the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000); *Henderson v. Walled Lake Consol. Schools*, 469 F.3d. 479, 487 (6th Cir. 2006). The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. *Reeves*, 530 U.S. at 150–51. Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 511 (6th Cir. 2009).

Thus, the central issue is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one–sided that one party must prevail as a matter of law.'" *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d

224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

## B. Hearsay

As an initial matter, the Court must address the admissibility of statements regarding YSK's Plant Manager Rick Harper's involvement with the termination proceedings.

Plaintiff offers the deposition of Michael Duffy, YSK's Vice President of Sales and Purchasing ("Duffy"), to establish that Harper was involved in the investigation of Plaintiff's misconduct. Specifically, Plaintiff points to Duffy's deposition in which Duffy stated that Eugene McFann ("McFann"), Senior Manager of Engineering at YSK, told Duffy that Harper told McFann he "was not involved anymore in [Plaintiff's] investigation." Duffy Depo. 27. Defendant argues Duffy's statement is a hearsay statement and thus inadmissible even during the summary judgment phase.

Defendant offers direct evidence from Shrimp, YSK's Human Resources Manager, that Harper did not participate in any way with the decision to terminate Plaintiff's employment and that Harper did not offer any information upon which the termination decision was based. Shrimp Aff. ¶ 12. Both Shrimp and Zeigler in their affidavits state that Shrimp, Zeigler, and Fletcher were the only parties that reviewed the documentation about the alleged misconduct and recommended to YSK's Board of Directors that Defendant be terminated. Shrimp Aff. ¶¶ 3–5; Zeigler Aff. ¶¶ 8–9.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c). Hearsay is inadmissible unless it falls under a hearsay exception. "'[I]t is well settled that only admissible evidence may be considered by a trial court in

ruling on a motion for summary judgment.'" *See Wiley v. United States*, 20 F.3d 222, 226 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir.1988)); *see also Daily Press, Inc. v. United Press Int'l*, 412 F.2d 126, 133 (6th Cir. 1969) (stating that hearsay evidence cannot be considered on a motion for summary judgment).

In this case, Plaintiff offers Duffy's testimony regarding McFann's alleged statement about Harper for the truth of the matter asserted, to prove Harper's supposed involvement with Grubb's termination decision. Notably, McFann himself has testified that Harper told him "he wasn't involved in the decision or the investigation [of Plaintiff]." McFann Depo. 21–22. Accordingly, Duffy's testimony regarding McFann's statements about Harper's involvement is hearsay and will not be considered by the Court in deciding the summary judgment motion.

Plaintiff also offers in his affidavit filed with his summary judgment motion that he believed Harper to be involved in his termination decision. Previously, however, Plaintiff during his deposition stated that he did not know who participated in that decision. Pl.'s Depo. 96–98. "[R]umors, conclusory allegations and subjective beliefs . . . are wholly insufficient evidence to establish a claim of discrimination as a matter of law." *Mitchell v. Toledo Hosp.*, 964 F.2d 577 (6th Cir. 1992) (citations omitted). Furthermore, "[a] party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." *Biechele v. Cedar Point, Inc.*, 747 F.2d 209, 215 (6th Cir. 1984). As such, the Court finds Plaintiff offers no evidence to establish Harper was in any way involved in his termination decision.

## C. Age Discrimination

Plaintiff alleges Defendant violated the ADEA when it terminated his employment. Defendant asserts Plaintiff cannot establish a prima facie case of age discrimination because he cannot demonstrate that he was: a) qualified for his position; b) replaced by a substantially younger person, or; c) treated less favorably than a similarly situated, younger associate.

The ADEA forbids employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a).

Circumstantial evidence may be used to establish an age discrimination case under the *McDonnell Douglas* burden shifting framework. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). To establish a prima facie case of age discrimination based on circumstantial evidence, the plaintiff must show that 1) he was a member of the protected class (*i.e.*, persons 40 years of age or over), 2) he was subject to an adverse employment action, 3) he was qualified for the position, and 4) he was replaced by someone outside the protected class. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008).

Under the burden shifting paradigm, if the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment action. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998). If the defendant meets its burden, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's

explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

### 1. Prima facie case

It is beyond dispute that Plaintiff who was 58 years old at the time of termination is a member of a protected class. It is also undisputed that Plaintiff's employment with YSK was terminated. Notwithstanding whether Plaintiff was qualified for the position, as reasonable minds could differ,[2] Plaintiff fails to establish he was replaced by YSK with a substantially younger person. Accordingly, Plaintiff fails to demonstrate a prima facie case of age discrimination. The Court notes that Plaintiff does not allege direct evidence of age discrimination in this case. Specifically, Plaintiff attested that no member of management made any discriminatory age–related remarks to him or about him. Pl.'s Depo. 103–07.

Both parties cite to *Lilley v. BTM Corp.*, 958 F.2d 746 (6th Cir. 1992). In *Lilley*, the plaintiff was terminated and his duties and accounts were assumed by the remaining sales staff. The Sixth Circuit stated that "spreading the former duties of a terminated employee among the remaining employees does not constitute replacement." *Lilley*, 958 F.2d at 752.

Defendant maintains that for at least six months after Grubb's termination, YSK redistributed Plaintiff's supervisor responsibilities to Toni Cooper ("Cooper"). Shrimp Aff. ¶ 11.

---

[2] The Sixth Circuit has held that to be considered qualified for a position an employee must demonstrate that he or she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction. *See Warfield v. Lebanon Correctional Institution*, 181 F.3d 723, 729 (6th Cir.1999).

Plaintiff's brief states that YSK assigned Plaintiff's former duties and job to Toni Cooper, J.L. Campbell, and then later to Gary Shaffen. In Plaintiff's deposition, however, he stated he did not know who replaced him but believed J.L. Campbell eventually replaced him. Pl.'s Depo. 95. Plaintiff also cites to McFann's deposition in which McFann denies Mr. Shaffen replaced Plaintiff and asserts Cooper carried the second and third shift supervisor duties. McFann Depo. 42–43. Plaintiff asserts that *Defendant* has failed to present enough facts in evidence to determine the redistribution of Plaintiff's responsibilities to other employees. Plaintiff further argues that reduction in force has not been offered by Defendant as the legitimate and non-discriminatory reason for Plaintiff's termination.

Plaintiff, however, has the burden to establish his prima facie case of age discrimination including that he was replaced by someone outside the protected class.

The uncontested evidence establishes that Cooper, who was already performing related work of supervising second shift, absorbed Plaintiff's duties for at least six months after Plaintiff's termination. "[A] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work." *Novotny v. Elsevier*, 291 Fed.Appx. 698, 702–03 (6th Cir. 2008) (citing *Barnes v. GenCorp Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

Also missing in Plaintiff's assertions are any facts establishing that Cooper or Campbell were substantially younger than Plaintiff. Specifically, Plaintiff stated during his deposition that he believed Campbell to be around 40, but that he "may be wrong." Pl.'s Depo. at 96. Likewise, *no* evidence has been presented regarding Cooper's age.

Without Plaintiff establishing any evidence that he was replaced nor any evidence of the alleged replacements' ages nor any other evidence regarding age discrimination, Plaintiff fails to establish a prima facie case of age discrimination. *See Taylor v. West Penn Allegheny General Hosp.*, Case No. 04-1564, 2005 WL 3113187 *2 (W.D. Pa. Nov. 21, 2005) ("[T]here is no evidence regarding Plaintiff's replacement, let alone her replacement's age. Without such evidence, Plaintiff has failed to meet the fourth prong of her *prima facie* case.").

The Court notes that a plaintiff can satisfy the fourth prong of the *prima facie* case by showing that he "was treated differently from similarly situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004). In this case, however, Plaintiff stated during his deposition that he was not alleging that younger associates at YSK were treated more favorably than he. Pl.'s Depo. 107–08. Plaintiff also does not assert age discrimination under this theory in his memorandum in opposition.

Accordingly, Plaintiff has failed to establish a prima facie case of age discrimination. As such, Defendant is entitled to summary judgment on this claim.

### 2. Pretext

Even assuming *arguendo* that Grubb could make out a prima facie case of discrimination, he has not presented evidence sufficient for a jury to reasonably find that YSK's asserted reason for his termination were pretextual.

Defendant articulated that its legitimate and nondiscriminatory reason for terminating Plaintiff's employment was Plaintiff's threatening and harassing behavior in violation of YSK's Associate Handbook Code of Conduct. The burden then shifts to

Plaintiff to demonstrate by a preponderance of evidence that those reasons were pretext. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994).

Plaintiff has the burden to provide sufficient evidence that would allow a reasonable jury to reject the employer's reason for its action and conclude that intentional, age-based discriminatory animus was YSK's true motivation for terminating Grubb. Despite the burden of persuasion shifting back to Grubb to demonstrate that Defendants' proffered reasons for expelling him were pretext, Plaintiff has not presented *any* evidence establishing unlawful animus based on age. For this additional reason, Defendant is entitled to summary judgment on Plaintiff's ADEA claim.

## D. FMLA

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12–month period for . . . a serious health condition that makes employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

The elements of a prima facie case of violation of the FMLA are: (1) plaintiff availed himself of a protected right under the FMLA; (2) plaintiff was adversely affected by an employment decision; and (3) there was a causal connection between plaintiff's protected activity and defendant's adverse employment actions. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th Cir. 2001) (citing *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990)).

Grubb can meet this burden of proof if he can demonstrate that YSK intentionally retaliated against him by discharging him because of his exercise of a protected FMLA

right. *Spurlock v. Peterbilt Motors Co.*, Inc., 58 Fed. Appx. 630, 631 (6th Cir. 2003). In the absence of direct evidence of YSK's intent to retaliate, however, Grubb may use the burden-shifting framework set forth in *McDonnell Douglas* to establish his prima facie case of FMLA retaliation. *Bryson v. Regis Corp.*, 498 F.3d 561, 570 (6th Cir. 2007).

YSK disputes Grubb's FMLA retaliation claim. YSK claims Grubb is unable to prove a prima facie case because the evidence does not support a causal connection between Grubb's request for FMLA leave and YSK's decision to terminate him. YSK argues it terminated Plaintiff's employment because he engaged in threatening and harassing misconduct in violation of YSK's Associate Handbook, not because of his FMLA leave, and argues that Grubb has failed to show that its reasons were designed to mask a retaliatory motive. To support this contention, YSK asserts Defendant was granted all the FMLA leave and non-FMLA medical leave he requested. Specifically, YSK points to the fact that after Plaintiff depleted his available FMLA leave, the Defendant allowed Plaintiff to take an additional six weeks of medical leave with full pay. Furthermore, YSK states the preliminary decision to terminate Plaintiff was made *prior* to his second request for FMLA, as the incident of misconduct occurred prior to his second request for FMLA. Plaintiff, however, suffered a heart attack before the termination meeting could be held and thus YSK decided to postpone the termination proceedings until Plaintiff recovered and returned to work.

Plaintiff disagrees with YSK's conclusions. He argues that the extended medical leave and the decision to terminate him prior to his second request for FMLA are not dispositive of whether YSK engaged in retaliatory conduct. According to Plaintiff, YSK's Plant Manager, Rick Harper, said "we could have terminated [Grubb] for using too much

FMLA." McFann Dep. at 10-11, 18, 21. Plaintiff asserts YSK is trying to insulate its actions and the actions of Harper by pointing the Court towards its voluntarily allowing Plaintiff to take additional leave with pay. Instead Plaintiff insists that Harper was involved in all investigations and decisions regarding Plaintiff's termination. Plaintiff concludes Harper's alleged statements are direct evidence that Plaintiff's exercise of his FMLA rights was unlawfully considered.

### 1. Direct Evidence

When an action is based upon direct evidence of discrimination—i.e., "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions"—a plaintiff need not proceed under the *McDonnell Douglas* analysis. *DiCarlo v. Potter*, 358 F.3d 408, 415 (6th Cir. 2004) (internal citation and quotation marks omitted).

In this case, Plaintiff directs the Court to *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696 (6th Cir. 2008), to support his contention that Harper's remarks are direct evidence of a genuine issue of material fact. In *Daugherty*, the Sixth Circuit found a decision-making supervisor's threat that if the plaintiff took FMLA leave, he would not have a job, as "direct evidence that [the plaintiff's] termination was motivated by unlawful, discriminatory animus." 544 F.3d at 708.

As discussed above, however, absolutely no admissible evidence has been offered by Plaintiff that Harper in any way was involved in his termination decision. Accordingly, the Court finds the evidence of Harper's comments not tantamount to direct evidence of discrimination as there is no evidence to connect the alleged prejudice against Grubb's use of FMLA with the decision to fire him. The Court

accordingly finds Plaintiff fails to present any direct evidence of FMLA retaliation.

### 2. Prima Facie case

Absent direct evidence of discrimination, which Grubb fails to present, the *McDonnell Douglas* test is used for FMLA claims. The elements of a prima facie case of violation of the FMLA are: (1) plaintiff availed himself of a protected right under the FMLA; (2) plaintiff was adversely affected by an employment decision; and (3) there was a causal connection between plaintiff's protected activity and defendant's adverse employment actions. *See Skrjanc*, 272 F.3d at 314.

The parties do not dispute that Plaintiff availed himself of a protected right under the FMLA or that he was adversely affected by an employment decision. Thus, the only issue apparently in dispute in regards to establishing the prima facie case is whether there is a casual connection between Plaintiff's use of FMLA leave and Defendant's decision to terminate Plaintiff.

Plaintiff offers that "at some point during the investigatory process, [Harper] unlawfully considered Plaintiff's exercise of his FMLA rights by stating, that, '. . . we could have terminated [Grubb] for using too much FMLA.'" This is Plaintiff's only evidence to show the causal connection between his taking of FMLA and his subsequent termination.

The evidence offered by Plaintiff to establish the causal connection is the same evidence offered by Plaintiff to establish direct evidence of FMLA retaliation. The Court rejects this evidence for the same reasons previously explained.

In regards to temporal proximity, the Court notes that despite Plaintiff's conduct,[3] the uncontroverted facts establish YSK granted Grubb FMLA leave and non-FMLA leave after the misconduct took place. Plaintiff admits to receiving all of the FMLA and non-FMLA leave requested, and that no one complained to him about the leave. Pl.'s Depo. at 60, 82–83. The Court finds persuasive that YSK was under no obligation to extend his medical leave after Grubb's FMLA leave expired, yet voluntarily extended his leave with pay. *Cf. Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506-07 (6th Cir.2006) (holding that an employer does not violate the FMLA when it fires an employee who is indisputably unable to return to work at the conclusion of the 12-week period of statutory leave."); *see also* 29 C.F.R. 825.214(b) ("If the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.").

The Court finds noteworthy that YSK was investigating Plaintiff's behavior prior to his request for FMLA leave for his heart attack, and that the unchallenged evidence that YSK planned to fire Grubb pending a meeting with Plaintiff. Zeigler Aff. ¶¶ 6–7; Shrimp Aff. ¶¶ 3–5; *see, e.g., Zenni v. Hard Rock Cafe Int'l, Inc.*, 903 F.Supp. 644, 655–56 (S.D.N.Y.1995) (holding that the plaintiff did not establish the causation element of the

---

[3]Plaintiff admits to the events of misconduct, including directing a subordinate, hourly associate to be part of the harassing phone call, admits to the language used during the call, and admits to reviewing the Handbook. Pl.'s Depo. at 68, 70–71, 74–75. Plaintiff asked a subordinate hourly associate, Robert Manbevers, to be present during the phone call Plaintiff placed to Detillion. Following the conclusion of the phone call, Plaintiff admittedly called Detillion "a little dickhead and would think twice before doing that again" to Manbevers. Pl.'s Dep. 71–75; Pl.'s Aff. ¶ 8. Plaintiff allegedly also told at least one other subordinate, Rex Newlan, about the incident saying, "Rob is being a dickhead, and I had to teach him a lesson to quit doing that. I called him on it. I called him up and said don't act like a dickhead." Pl.'s Dep. 77; Pl.'s Aff. ¶ 8.

prima facie case for retaliation where he committed infractions and the employer negatively evaluated him before he complained about alleged discrimination). Upon his return, and after affording Grubb an opportunity to explain his conduct, YSK terminated his employment for the threatening and harassing conduct in violation of YSK's Standards of Conduct. Plaintiff asserts temporal proximity of the exercise of rights under FMLA and the adverse employment action is evidence this Court can consider. In this case, however, the Court finds that the unrebutted evidence establishes that the termination decision was made *prior* to Grubb's request for FMLA leave for his heart attack. *Sosby v. Miller Brewing Co.*, 415 F. Supp. 2d 809, 822 (S.D. Ohio 2005) ("[e]vidence that the employer had been concerned about a problem before the employee engaged in the protected activity undercuts the significance of the temporal proximity.") (citing *Smith v. Allen Health Sys.*, 302 F.3d 827, 834 (8th Cir.2002)); *Carpenter v. Kaiser Permanente*, 2006 WL 2794787 *18 (N.D. Ohio September 27, 2006) (empoyer's processing of termination prior to request for leave undermines temporal proximity). Thus the temporal proximity does not support to establish a genuine issue of material fact on whether there was a causal connection between Grubb's request for FMLA leave and YSK's dismissal of him, as coincidental timing between the protected activity and the adverse action is, without more, insufficient to establish causation. *Jeremy v. Northwest Ohio Development Center*, 33 F. Supp. 2d 635, 639 (N.D. Ohio 1999).

"Although the FMLA prohibits employers from considering a request for medical leave as a negative factor in an employer's decision to discharge or demote an employee, it is not a shield to protect employees from legitimate disciplinary action by

their employers if their performance is lacking in some manner unrelated to their FMLA leave." *Carpenter*, 2006 WL 2794787 at *19. The Court finds that Plaintiff fails to make a sufficient showing to establish the existence of a causal connection between Plaintiff's protected activity and Defendant's adverse employment actions. Conversely, Plaintiff admits to his threatening and harassing conduct prior to his termination. As Plaintiff fails to set forth evidence showing there is a genuine issue of material fact, Defendant is entitled to summary judgment on the FMLA claim. *Barrett*, 556 F.3d at 511.

### E. State Law Claims

Having determined that Plaintiff's federal claims are subject to dismissal, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims. 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966). The Court will therefore remand Plaintiff's state law claims to the Ross County Common Pleas Court.

### IV. Conclusion

For the reasons articulated, the Court **DISMISSES** with prejudice Plaintiff's ADEA and FMLA claims. The Court **REMANDS** to state court Plaintiff's breach of implied contract and promissory estoppel claims.

**IT IS SO ORDERED.**

/s/ **Michael H. Watson**
Michael H. Watson, Judge
United States District Court